IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES W. MYART JR., | § | |
| | § | |
| *Plaintiff,* | § | SA-19-CV-00702-OLG |
| | § | |
| vs. | § | |
| | § | |
| CITY OF SAN ANTONIO, BAPTIST | § | |
| HOSPITAL SYSTEM, MATT STONE, | § | |
| CEO BAPTIST HOSPITAL SYSTEM, | § | |
| CORPORATELY AND INDIVIDUALLY; | § | |
| BAPTIST HOSPITAL SYSTEM | § | |
| PRIVATE SECURITY COMPANY, | § | |
| JOHN DOE COMPANY, JACOB | § | |
| CORONAL, JOHN DOE SECURITY | § | |
| COMPANY, JOHN AND JANE DOES 1- | § | |
| 5, INDIVIDUAL AND EMPLOYMENT; | § | |
| EMPLOYEES OF JOHN DOES | § | |
| SECURITY COMPANY, JANE DOE, | § | |
| HEAD ER NURSE; AND JANE DOES 1- | § | |
| 6, ER NURSES, ALL INDIVIDUALLY | § | |
| NAMED PERSONS SUED | § | |
| INDIVIDUALLY AND AS EMPLOYEES | § | |
| OF BAPTIST HOSPITAL SYSTEM IN | § | |
| THEIR CAPACITIES INDIVIDUAL | § | |
| AND EMPLOYMENT; | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation and Order concerns the following dispositive and

nondispositive motions: the Motion to Dismiss filed by Defendants VHS San Antonio Partners,

LLC d/b/a Baptist Medical Center (misnamed as Baptist Hospital System) and Matthew Stone

(misnamed as Matt Stone, CEO, Baptist Hospital System Corporately and Individually) [#3]; the

Motion to Dismiss filed by Defendant City of San Antonio [#19]; Plaintiff's Motion for Leave

to File Second Motion for 90 Day Stay with Medical Evidence [#21]; and Plaintiff's Motion to

Lift Stay and Various Notices to the Court [#38]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#4]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and this Order pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, it is recommended that Defendants' Motions to Dismiss [#3, #19] be **GRANTED** and that Plaintiff's claims against the unserved Defendants be dismissed *sua sponte*. The Court will also order that Plaintiff's Motion for Leave to File Second Motion for 90 Day Stay with Medical Evidence [#21] be **DENIED** and Plaintiff's Motion to Lift Stay and Various Notices to the Court [#38] be **GRANTED IN PART**.

## I. Procedural Background

Plaintiff James W. Myart, Jr. originally filed this action in the 45th Judicial District of Bexar County, Texas. (Orig. Pet. [#1-3] at 2–18.) Plaintiff's Original Petition named the following parties as Defendants: Baptist Hospital System; Matt Stone, CEO; Baptist Hospital System Private Security Company; John Doe Company; Jacob Coronal; John Doe Security Company; John and Jane Does 1–5; Head ER Nurse Jane Doe; Jane Does 1–6; and ER Nurses. (*Id.* at 2.) Plaintiff alleges that Defendants falsely accused him of assaulting one of the Jane Doe nurses and issued him a criminal trespass citation barring him from entering Baptist Hospital. (*Id.* at ¶ 2.) Plaintiff asserted the following causes of action against Defendants: business disparagement, defamation, libel, slander, false imprisonment, assault, conspiracy to deny Plaintiff's constitutional rights, theft, and trade-secret misappropriation. (*Id.* at ¶¶ 38–58.) Plaintiff's Original Petition pleaded damages in the amount of $1,500,000.00 and sought a temporary and permanent injunction against Defendants prohibiting them from enforcing the criminal trespass citation. (*Id.* at ¶¶ 24, 59.)

The record reflects that a Bexar County judge granted Plaintiff's request for a temporary restraining order on May 30, 2019. (TRO [#1-3] at 23–24.) Plaintiff thereafter filed an Amended Petition in state court, adding as Defendants the City of San Antonio, Mayor Ron Nirenberg, Police Chief William McManus, Officer John Turner, Officer John Villareal, and Sgt. John Doe. (Am. Pet. [#1-3] at 60–68.) The Amended Petition, which remains the live pleading in this case, alleges that, despite the issued TRO, Baptist Hospital refused to treat Plaintiff and instead contacted SAPD to arrest him. (*Id.* at ¶¶ 5–6.) The chronology of the subsequent events described in Plaintiff's pleadings is unclear, but it appears that Plaintiff's arrest did not result in criminal charges. Plaintiff claims he "was rejected" by the Office of the Magistrate and was taken instead to University Hospital for emergency medical treatment, because he apparently had need for further treatment. (*Id.* at ¶ 7.) Plaintiff alleges that at some later point, presumably after his discharge from University Hospital, he attempted to return to Baptist Hospital for treatment, but treatment was again denied. (*Id.* at ¶ 8.) Plaintiff asserts additional causes of action under Section 1983 against Defendants, alleging a violation of his Fourth and Fourteenth Amendment rights. (*Id.* at ¶ 15–18.) A Bexar County judge issued a second TRO on June 10, 2019. (TRO [#1-3] at 78–82.)

The City of San Antonio answered Plaintiffs' Amended Petition in state court and then removed this case to federal court. (Answer [#1-6] at 1–5; Notice of Removal [#1].) Defendants VHS San Antonio Partners (misnamed Baptist Hospital System) (hereinafter, "Baptist") and Matthew Stone (misnamed Matt Stone, CEO) (hereinafter, "Stone") consented to removal and promptly filed the Motion to Dismiss that is currently pending before the Court. (Consent [#1-5]; Mot. to Dismiss [#3].) The Court subsequently stayed this case pending the resolution of the threshold issues raised in Defendants' motion to dismiss. (Order [#5].) Under this Court's Local

Rules, Plaintiff's response to Defendants' motion was due on or before July 12, 2019. *See* Loc. R. CV-7(e) (responses to dispositive motions due within 14 days of motion's filing); Fed. R. Civ. P. 6(a), (d) (adding three days to response deadline for service by mail and extending the deadline to Monday if the final date otherwise falls on a Sunday).

Plaintiff did not file a response to Defendants' motion by the July 12, 2019 deadline. Instead, Plaintiff filed a motion requesting a 90-day stay of all deadlines in this case due to Plaintiff's medical issues, including his deadline to respond to Defendants' motions to dismiss. The Court held a status conference to address the requested stay on August 7, 2019. After hearing the arguments of Plaintiff at the conference, considering Plaintiff's substantial litigation activity in this and other cases leading up to the conference, and reviewing the medical evidence attached to Plaintiff's motion, the Court denied Plaintiff's request for a 90-day stay of the entire case, but stayed all discovery pending the resolution of Defendants' motions to dismiss. (Order [#10].) In the same Order, the undersigned ordered that any party seeking to file any document in this case must first seek leave of court and ordered the City of San Antonio to file an amended answer or Rule 12 motion within 10 days of the Order. The City of San Antonio timely filed the motion to dismiss that is pending before the Court [#19].

Since this hearing and Order was issued, Plaintiff moved for leave to file another 90-day stay on September 25, 2019, which would further delay a ruling on Defendants' motions to dismiss [#21]. A few weeks later, Plaintiff filed a motion to lift the stay and proceed with this case [#38]. In the interim, Plaintiff has also filed a number of appeals to the District Court (alleging bias, asking for reconsideration, and seeking recusal) and two appeals with the Fifth Circuit. The District Court denied Plaintiff's appeals and motions for recusal, and the Fifth

Circuit dismissed both of Plaintiff's interlocutory appeals for lack of jurisdiction. The undersigned now considers each of the four pending motions in this case in turn.

**II.  Plaintiff's Motion for Leave to File a Motion for 90-Day Stay
and Motion to Lift Stay**

Plaintiff asks the Court for leave to file another motion for a 90-day stay of this case due to his medical issues. Attached to the motion are over one hundred pages of medical evidence demonstrating that Plaintiff has been hospitalized numerous times in the past several months, has lost eyesight in his right eye, and suffers from end-stage renal disease. (Med. Records [#21-1].) Plaintiff also filed additional supplemental records in support of his motion. (Med. Records [#24, #26].) In his motion, Plaintiff accuses the undersigned and the District Court of not caring about his medical condition or believing him to be lying to the Court about his illnesses. To the contrary, Plaintiff has sufficiently documented that he suffers from serious medical conditions, which have at times required his hospitalization. Nonetheless, the Court will deny leave to file a second request for a 90-day stay for the following reasons.

This case is currently at the preliminary stage in which the Court is asked to decide threshold issues raised in two motions to dismiss filed by Defendants. At the motion-to-dismiss stage, the Court reviews only the plausibility of Plaintiff's pleadings and does not consider any evidence. Accordingly, there is no need for discovery or any other action by Plaintiff, aside from a response to the pending motions to dismiss or supplemental pleading clarifying Plaintiff's allegations to demonstrate that they give rise to valid causes of action under the law. Plaintiff has filed responses to Defendants' motions (albeit late ones) [#27, #31, #35, #36]. Discovery has been stayed pending the resolution of Defendants' motions. Other than supplementing his pleadings or filing objections, nothing else is required of Plaintiff at this time and a stay of the entire case is unnecessary.

Moreover, even if discovery and other aspects of the litigation were proceeding (and thus a stay would have a bigger impact), the Court would deny the motion. Plaintiff has filed dozens of pleadings, motions, and appeals in this case and other cases pending before this Court[1] since Defendants filed their motions to dismiss. Plaintiff has demonstrated that, although his illness may be serious, he is capable of drafting hundreds of pages of court filings and actively pursuing multiple cases before this Court and others.

Finally, Plaintiff has also most recently filed a motion to *lift* the stay in this case [#38], complaining about the delay in the issuance of any rulings in his case and the lack of a scheduling order and a date for trial.[2] It appears therefore that Plaintiff is abandoning his request for a stay. The Court therefore will deny the current pending motion for leave to file a motion to stay and grant in part Plaintiff's motion to lift the stay and proceed with this case.

### III. Defendants' Motions to Dismiss

The Court should grant the motions to dismiss filed by Baptist and Stone [#3] and the City of San Antonio [#19] and dismiss all of the claims and causes of action asserted against them in this lawsuit for failure to state a claim. The Court should also *sua sponte* dismiss Plaintiff's claims against all remaining unserved Defendants.

### A. Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] Four other lawsuits filed by Plaintiff were pending before this Court at the time Plaintiff filed his request for a stay (5:19-CV-507-OLG, 5:19-CV-753-OLG, 5:19-CV-906-OLG, and 5:19-CV-1174-OLG), some of which were newly filed during the time period in which Plaintiff suffered from various medical issues.

[2] The undersigned notes that Plaintiff's voluminous filings, including multiple appeals and requests for recusal, have significantly hampered the Court's ability to efficiently dispose of the pending motions that concern preliminary matters in the case.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

The undersigned is mindful that in evaluating the merits of Defendants' motions to dismiss, a court views Plaintiff's *pro se* pleadings under a less stringent standard than those drafted by an attorney. *See Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983). As a result, Plaintiff's filings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from these pleadings. *See id.* The undersigned does remind the District Court, however, that although Plaintiff is proceeding *pro se* in this case, he did attend law school and

previously was a member of the bar, so he has more legal training and experience than a typical *pro se* litigant.

**B.     Factual Allegations in Plaintiff's Live Pleading**

Plaintiff's Original and First Amended Petitions read together contain the following factual allegations:  Plaintiff claims that on an unidentified date he was taken by ambulance to Baptist Hospital's Emergency Room, and the doctor on duty told him it was "ok for [him] to leave the Emergency Room."  (Pet. [#1-3] at ¶ 19.)  Plaintiff alleges he was thereafter falsely accused of assaulting a nurse and was issued a criminal trespass form indicating he could no longer enter the hospital, even though his specialists and primary care physician work there.  (*Id.* at ¶ 2.)  Plaintiff further alleges that he was held under false arrest by John Doe Security Guard Company until SAPD arrived on the scene, and during this false arrest he was "physically manhandl[ed]."  (*Id.* at ¶ 3.)  Upon SAPD's arrival, Plaintiff claims he was released.  (*Id.*)  As previously stated, the state court issued a temporary restraining order declaring the criminal trespass order null and void on May 30, 2019.  (TRO [#1-3] at 21.)

Plaintiff's Amended Petition contends that on May 31, 2019, he again presented himself to Baptist Hospital seeking medical care, but Baptist Hospital refused him care based on the criminal trespass order described in Plaintiff's Original Petition.  (First Am. Pet. [#1-3] at ¶ 5.) Plaintiff claims he was arrested for trespass despite showing SAPD Officers Turner and Villareal the TRO issued by the state court.  (*Id.* at ¶¶ 5–6.)  When Plaintiff was taken to the Office of the Magistrate for processing, he claims he was "rejected" (likely meaning no criminal charges ensued) and was instead taken to University Hospital for emergency medical treatment.  (*Id.* at ¶ 6–7.)  Plaintiff alleges he returned to Baptist Hospital at some later date, attempting to seek treatment, and was again told he could not receive treatment at the Hospital.  (*Id.* at ¶ 8.)

## C.    Baptist and Stone Motion to Dismiss [#3]

Defendants Baptist and Stone move to dismiss all of the causes of action asserted against them in Plaintiff's pleadings—assault, false imprisonment, defamation, business disparagement, civil conspiracy, theft, and trade-secret misappropriation.   All of these claims should be dismissed for failure to state a claim upon which relief can be granted.

### (i)    Assault and False Imprisonment

Plaintiff's Original Petition appears to allege claims of assault and false imprisonment or false arrest.   (Pet. [#1-3] at ¶¶ 3, 24, 29, 46, 48.)   Plaintiff alleges that he was physically manhandled, assaulted, and falsely arrested by six to eight unnamed persons when detained under the criminal trespass order issued at Baptist Hospital.  (Pet. [#1-3] at ¶ 3.)

Texas recognizes the intentional torts of assault and false imprisonment.  *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014) ("Texas courts have recognized private causes of action for both assault and battery for well over a century."); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002) (describing tort of false imprisonment).   In Texas, "[t]he elements of false arrest and false imprisonment are similar enough to be indistinguishable." *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 754 (Tex. App.—Corpus Christi 1998, no pet.).  For purposes of this Order, the undersigned refers to Plaintiff's claims as for assault and false imprisonment.

In Texas, "[t]he elements of a civil assault mirror those of a criminal assault."  *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012).  Under the Texas Penal Code, an assault occurs if a person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id.* (citing Tex. Pen. Code § 22.01(a)).  The essential elements of false imprisonment are: (1)

willful detention; (2) without consent; and (3) without authority of law. *Rodriguez*, 92 S.W.3d at 506.

Plaintiff's only allegations with respect to these claims are that he was manhandled and detained by a group of unnamed persons at Baptist Hospital after he was issued a criminal trespass citation. Baptist and Stone argue these claims should be dismissed because Plaintiff's allegations are cursory and do not include any specific acts taken by Baptist or Stone. Plaintiff's allegations are indeed sparse, and he does not identify any specific actor involved with his assault or false imprisonment by name. It is therefore unclear whether Plaintiff is alleging he was assaulted and falsely imprisoned by nurses, security guards, or other hospital employees.

Plaintiff does name additional Defendants to this action who could be employees of Baptist responsible for the alleged assault and false imprisonment: Baptist Hospital System Private Security Company; John Doe Company; Jacob Coronal; John Doe Security Company; John and Jane Does 1–5; Head ER Nurse Jane Doe; Jane Does 1–6; and ER Nurses. (Pet. [#1-3] at 2.) Plaintiff's Original Petition, however, expressly states that Plaintiff "waives process" on all of these individuals and entities, and Plaintiff only served his Original Petition containing the assault and false imprisonment allegations on Baptist and Stone. (Citation returned for Stone [#1-3] at 129; Citation returned for Baptist [#1-3] at 131.) The state court record demonstrates that none of the other Defendants who are identified by name, such as Jacob Coronal, were ever served with process. Multiple citations to Coronal appear in the state court record, but the Officer's Return is either blank or contains a notation that Coronal's name was misspelled and requesting reissuance of service under his correct name, Corona. (*See* Unreturned Citation issued to Coronal [#1-3] at 92; Citation issued to Coronal [#1-3] at 118.) There is no indication Plaintiff ever requested the reissuance of a citation in the name of Corona and had Corona served

10

with his Petition.  Nor is there any indication that Plaintiff attempted to identify any of the unnamed Defendants, such as John Doe Security Company, the ER Nurses, or other Jane Does, so that they could be served.  At least one citation, issued to John Doe Security Company, contains a notation in the Officer's Return asking Plaintiff to re-serve the Defendants after identifying the security company by name.  (*See* Citation issued to John Doe Security Company [#1-3] at 90.)  As with Coronal, there is no indication in the record that Plaintiff ever did so.

Although it is plausible that Plaintiff intended to sue Baptist and Stone, as Baptist's CEO, based on a theory of *respondeat superior* for the acts of some unidentified Baptist employees, Plaintiff does not state as much anywhere in his Petition.  Where an intentional tort, like assault and false imprisonment, is committed in the course and scope of employment, and the tort is closely connected with and immediately grew out of the employment, liability can be imputed to an employer under the theory of *respondeat superior*.  *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex. 1999).  This is true even if the employer has personally committed no wrong. *Green v. Ransor, Inc.*, 175 S.W.3d 513, 516 (Tex. App.—Fort Worth 2005, no pet.) (citing *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)).  Yet to make such allegations, Plaintiff needs to do more than name Baptist and Stone as Defendants in this action. Plaintiff does not describe anything about the alleged assault or false imprisonment, the persons involved in it, when it occurred, how it occurred, whether it was at the direction of a supervisor, and most importantly whether the persons involved were in fact employees of Baptist and their acts were "closely connected with" their employment.  These allegations of assault and false imprisonment are far too vague and generalized to be sufficient to allege vicarious liability against Baptist or Stone, and these claims should be dismissed.

(ii)      <u>Defamation and Business Disparagement</u>

Plaintiff's Original Petition also pleads claims of defamation and business disparagement. (Pet. [#1-3] at ¶ 20, 22, 41–47.)  Plaintiff alleges that Defendants made false statements about Plaintiff; published the defamatory statements "in conversations with third parties"; and caused Plaintiff to suffer public humiliation and embarrassment and loss to his business reputation. (*Id.*.)  In making these allegations, Plaintiff references both libel and slander in addition to defamation and business disparagement.  (*Id.* at ¶ 39.)

Slander and libel are each types of defamation.  *Burlington Ins. Co. v. Superior Nationwide Logistics, Ltd.*, 783 F. Supp. 2d 958, 963 (S.D. Tex. 2010).  Libel is defamation expressed in print or writing; slander is communicated orally.  *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); Tex. Civ. Prac. & Rem. Code § 73.001.  In either form, the elements of defamation include at minimum the following: (1) the publication of a false statement fact to a third party; (2) with either malice (if the plaintiff is a public figure) or negligence (if the plaintiff is a private individual) regarding the truth of the statement.  *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

"Business disparagement and defamation are similar in that both involve harm from the publication of false information."  *In re Lipsky*, 460 S.W.3d at 591.  Yet these two torts serve different interests.  *Id.*  Defamation actions protect the personal reputation of an injured party, whereas a business disparagement claim protects economic interests.  *Id.* (citing *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).  "To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in

special damages to the plaintiff." *Forbes*, 124 S.W.3d at 170. "To prove special damages, a plaintiff must provide evidence of direct, pecuniary loss attributable to the false communications of the defendants." *Id.*

As with Plaintiff's allegations of assault and false imprisonment, Plaintiff does not specify who actually published false statements about him with respect to his claims of defamation and business disparagement. Nor does he make any statements in his Petition clarifying that he is attempting to bring these claims against Baptist and Stone on a theory of *respondeat superior*. In addition to these deficiencies, Plaintiff does not identify these false statements or disparaging words; to whom they were communicated to and published; how they were communicated and published; how the statements caused Plaintiff harm; and what were Plaintiff's special damages for purposes of his business disparagement claim. Again, Plaintiff's conclusory allegations are insufficient to state a claim for defamation or business disparagement. *See Chhim*, 836 F.3d at 469.

(iii)  Civil Conspiracy

Plaintiff's Original Petition also expressly asserts a claim of conspiracy. (Pet. [#1-3] at 51–53.) Plaintiff alleges that Defendants "had a meeting of the minds on the object or course of action" and "at least one of the members committed an unlawful overt act to further the object or course of action." (*Id.* at ¶ 53.)

Under Texas law, the elements of a civil conspiracy are (1) "two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). This claim suffers from the same pleading deficiencies as the claims previously discussed. Plaintiff does not identify the alleged conspirators, explain how Stone was

involved in the alleged conspiracy, describe the purpose of the alleged conspiracy, or identify any overt act taken on behalf of the alleged conspiracy. As a result, this claim also fails for lack of sufficient factual allegations to state a claim of relief that is plausible, rather than merely speculative. *See Iqbal*, 556 U.S. at 678.

        (iv)    <u>Theft and Trade Secret Misappropriation</u>

Plaintiff's Original Petition also alleges claims of theft and trade-secret misappropriation. (Pet. [#1-3] at ¶¶ 55–58.) Plaintiff alleges that Defendants "unlawfully appropriated, secured, or stole property" belonging to him. (*Id.* at ¶ 75 [sic 56].) Plaintiff does not explain what property was allegedly stolen, and it is unclear from Plaintiff's Petition if he is asserting only the theft of a trade secret or also the theft of some other property.

The Texas Uniform Trade Secrets Act ("TUTSA"), which became effective in 2013, now governs claims for trade-secrets misappropriation in Texas. Tex. Prac. & Rem. Code §§ 134A.002(1), (3), (6), 134A.004(a). The elements of a statutory misappropriation claim under TUTSA involve (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; and (2) disclosure of the trade secret without express or implied consent by a person who satisfies one of six statutory paths to liability. *His Company, Inc. v. Stover*, 202 F. Supp. 3d 685, 692 (S.D. Tex. 2016), *vacated as moot*, No. 4:15-CV-00842, 2016 WL 6134939 (S.D. Tex. Sep. 8, 2016).

TUTSA preempts all claims of civil theft that seek relief from harm related to the misappropriation of a trade secret but has no effect on "other civil remedies that are not based upon misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a), (b)(2). Accordingly, civil theft claims under Texas law survive TUTSA so long as the theft involves something other than the trade secret or addresses the harm stemming from the loss of the

tangible item itself, rather than the trade secret it contains. *Lifesize, Inc. v. Chimene*, No. 1:16-CV-1109-RP, 2017 WL 1532609, at *12 (W.D. Tex. Apr. 26, 2017).

Insofar as Plaintiff is attempting to advance a claim for civil theft unrelated to a trade secret or to remedy harm separate from the trade secret misappropriation, Plaintiff's civil theft claim is not preempted and is governed by the Theft Liability Act ("TLA"). Tex. Prac. & Rem. Code § 134.003(a). The elements of a cause of action under the TLA are the following: (a) the plaintiff had a possessory right to property or was the provider of services; (b) the defendant unlawfully appropriated, secured, or stole the plaintiff's property or services; (c) the unlawful taking was made with the intent to deprive the plaintiff of the property or avoid payment for services; and (d) the plaintiff sustained damages as a result of the theft. *Id.*; Tex. Penal Code § 31.03.

Whether Plaintiff is claiming a violation of TUTSA, civil theft, or both, these claims also fail for vagueness. Plaintiff does not identify who allegedly stole his property or acquired his trade secret, the nature of that property or trade secret, how his trade secret was disclosed, how he was harmed, or any facts whatsoever plausibly suggesting Baptist, Stone, or any Baptist employee committed theft or trade-secret misappropriation. These claims should also be dismissed for failure to state a claim.

## D. City of San Antonio Motion to Dismiss [#19]

Defendant the City of San Antonio ("the City") also moves to dismiss all of the causes of action asserted against it by Plaintiff pursuant to Rule 12(b)(6). The City filed an answer in state court prior to removal and prior to its filing of the Motion to Dismiss before the Court. (Answer [#1-3] at 28–31.) The Court therefore construes the City's 12(b)(6) motion as a motion for judgment on the pleadings pursuant to Rule 12(c). *See L'Amoreaux v. Wells Fargo Bank, N.A.*,

No. A-13-CV-052 LY, 2013 WL 12097806, at *2 (W.D. Tex. May 7, 2013), *adopted by* 2013

WL 12098738 (W.D. Tex. July 15, 2013) (considering a Rule 12(b)(6) motion to dismiss as a

Rule 12(c) motion because it was brought after the defendant filed an answer in the state court

prior to removal). The standard for deciding a motion under Rule 12(c) is the same as that

governing motions under Rule 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean*

*Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002.)

The City is not a named Defendant in Plaintiff's Original Petition and is only named with

respect to the allegations in Plaintiffs' First Amended Petition. The First Amended Petition

alleges only one cause of action—a violation of Plaintiff's Fourth and Fourteenth Amendment

rights pursuant to 42 U.S.C. § 1983. Although Plaintiff's Amended Petition names Mayor Ron

Nirenberg, Police Chief McManus, Officer John Turner, Officer John Villareal, and Sgt. John

Doe (in both their individual and official capacities), there is also no record of any of these

individuals being served with either pleading in this case. Accordingly, for purposes of the

City's motion, the Court only considers the individual municipal Defendants as named in their

official capacities, as such claims are simply another way of pleading an action against the entity

of which the individual is an agent—here, the City. *See Will v. Michigan Dep't of State Police*,

491 U.S. 58, 89 (1989).

Plaintiff's Section 1983 claim against the City should be dismissed for failure to state a

claim upon which relief can be granted. Section 1983 provides a cause of action against "[e]very

person" who, acting under color of state law, has deprived a person of a federally protected

statutory or constitutional right.[3] 42 U.S.C. § 1983. Under Section 1983, municipalities and

---

[3] Plaintiff does not allege the constitutional violations asserted in his Amended Petition
against Baptist and Stone, but these claims would fail if he did so, as Baptist and Stone are not
state actors subject to suit under Section 1983 unless there is an agreement between private and

other such governmental units are considered "persons" subject to liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (local government entities are persons subject to suit under Section 1983); *De La O v. Hous. Auth. of the City of El Paso*, 417 F.3d 495, 503 (5th Cir. 2005) (claims against municipal housing authority treated as claims against municipality itself). "By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress—the supreme sovereign on matters of foreign law—abolished whatever vestige of the State's sovereign immunity the municipality possessed." *Owen v. City of Indep., Mo.*, 445 U.S. 622, 648 (1980).

However, only an official policy or custom of the City could expose it to liability for a violation of Plaintiff's constitutional rights; *respondeat superior* liability for the acts of municipal employees is not available. *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Municipal liability under 42 U.S.C. § 1983 requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694.

Regardless of whether Plaintiff states a plausible claim for a violation of his constitutional rights, his Section 1983 claim against the City must be dismissed because Plaintiff has not alleged any facts that suggest that an identified policymaker enacted a policy that is the moving force behind any such violation. Nor are there any allegations of a pattern or practice of the similar issuance of criminal trespass citations and arrests so as to allege a custom based on a longstanding pattern or practice. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850

---

state actors to commit an illegal act. *See Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005); *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004). There are no such allegations in the Amended Petition, and Baptist and Stone's motion to dismiss does not address Plaintiff's Section 1983 claim.

(5th Cir. 2009) ("A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy.") (internal quotation and citation omitted). Although Plaintiff recites the law on municipal liability in his Amended Petition, the entirety of Plaintiff's factual allegations as to his Section 1983 claim is that he attempted to show Officer Turner and Officer Villreal the TRO signed by the Bexar County judge but was denied medical treatment and arrested. (Am. Pet. [#1-3] at ¶¶ 5–8.) These allegations are insufficient to state a claim under Section 1983 against a municipal entity. To survive the City's motion to dismiss, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory" and "must contain specific facts" that suggest a right to relief above the speculative level. *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Twombly*, 550 U.S. at 555.

The only other allegations made by Plaintiff are that the City was deliberately indifferent in its training of its officers, which resulted in his allegedly improper arrest despite the TRO. (Am. Pet. [#1-3] at ¶ 9–14.) "In a [section] 1983 claim for failure to supervise or train, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotation and citation omitted). "Showing that a municipality's training program is inadequate requires that the plaintiff 'allege with specificity how a particular training program is defective.'" *Bryan v. City of Dallas*, 188 F. Supp. 3d 611, 620–21 (N.D. Tex. 2016) (quoting *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010)). Plaintiff has neither identified a particular training program nor specified how such a program is deficient. *See id.* Plaintiff does no more

than recite the law on municipal liability and allege generally that there was a policy or custom demonstrating the deliberate indifference of the City and underlying the constitutional violation. Plaintiff's conclusory allegations are insufficient to state a claim under Section 1983. *See Chhim*, 836 F.3d at 469. The Court should dismiss Plaintiff's Section 1983 claim against the City of San Antonio and the individual municipal Defendants in their official capacities.

**E.      *Sua Sponte* Dismissal of Unserved Defendants**

As noted herein, there are a number of individual Defendants who remain unserved in this litigation. A federal court is without personal jurisdiction over a defendant unless the defendant is served under Rule 4. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Federal Rule of Civil Procedure 4(m) gives federal litigants 90 days to serve process. A plaintiff who does not perfect service of process in state court therefore has 90 days from the date of removal in which to complete this task. 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1137 (4th ed.) ("In removed cases, the Rule 4(m) time period starts to run upon removal to the federal district court, not the date the action was originated in state court.").

This case was removed from state court on June 18, 2019. The 90-day period in which to effect service on any unserved Defendants has long expired in this case. Under Rule 4(m), this Court may *sua sponte* dismiss an action without prejudice against unserved Defendants or order that service be made within a specified time. Fed. R. Civ. P. 4(m). If good cause exists for the failure, the district court must extend the time of service for an appropriate period. *Id.* A plaintiff bears the burden of showing valid service or good cause for failure to effect timely service. *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013). Plaintiff has neither demonstrated service or good cause for failing to serve the other Defendants. Accordingly, the

undersigned will recommend that Plaintiff's claims against all unserved Defendants named in the Original and Amended Petitions be dismissed without prejudice under Rule 4(m) unless Plaintiff files an explanation containing good cause for his failure to serve these Defendants as part of any objections filed in response to this report and recommendation.

## IV.  Plaintiff's Request to Amend

Plaintiff requests the ability to replead and file an amended complaint in his response to Defendants' motions to dismiss.  (Resp. [#27] at 3.)   Under the Court's Local Rules, when a party seeks leave to file an amended pleading, the party is required to submit the proposed amended pleading to the Court for consideration.  *See* Local Rule CV-7(b).  Plaintiff did not do so in this case.  While amendment of pleadings is generally permissible early in a case, courts are not required to permit amendment if amendments cannot cure pleadings defects.  *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (a court may deny leave to amend where amendment would be futile).  That is, of course, why the Court's Local Rules require the submission of the proposed amended pleading at the time leave to amend is requested—so that the proposed amendments can be evaluated to ascertain whether they are futile or cure some or all defects.

Because Plaintiff has not submitted his proposed amended pleading, the undersigned is unable to evaluate whether his supplemental pleadings would cure any of the deficiencies outlined in this Report and Recommendation.  Thus, although the undersigned is recommending dismissal of the claims based on Plaintiff's current pleadings, the undersigned will also order that within fourteen days, at the same time that he files any objections to this Report and Recommendation, Plaintiff should file a More Definite Statement in accordance with Rule 12(e) of the Federal Rules of Civil Procedure.  That pleading should be in a separate document from

his objections to the Report and Recommendation and will enable the District Court to evaluate whether Plaintiff has cured any of the pleading defects at the same time the District Court considers the Report and Recommendation and any objections to it. Plaintiff is warned that failure to file a More Definite Statement by the deadline imposed in this Order will result in the District Court considering the undersigned's recommendation in light of the factual pleadings contained in the First Amended Petition only.

## V. Conclusion and Recommendation

Having considered Defendants' motions to dismiss, Plaintiff's pleadings and responses, the relevant law, and the entire case file, the undersigned recommends the following:

- The Motion to Dismiss filed by Defendants VHS San Antonio Partners, LLC d/b/a Baptist Medical Center (misnamed as Baptist Hospital System) and Matthew Stone (misnamed as Matt Stone, CEO, Baptist Hospital System Corporately and Individually) [#3] be **GRANTED**.

- The Motion to Dismiss filed by Defendant City of San Antonio [#19] be **GRANTED**.

- All claims against all unserved individual Defendants (Baptist Hospital System Private Security Company, John Doe Company, Jacob Coronal, John Doe Security Company, John and Jane Does 1–5, Head ER Nurse Jane Doe, Jane Does 1–6, ER Nurses, Mayor Ron Nirenberg, Police Chief McManus, Officer John Turner, Officer John Villareal, and Sgt. John Doe) be *sua sponte* **DISMISSED WITHOUT PREJUDICE**.

Also, in accordance with the foregoing, the undersigned now enters the following orders:

**IT IS ORDERED** that Plaintiff **FILE** a More Definite Statement supplementing his factual pleadings with regard to his existing causes of action **within 14 days** of this Order during the objection period.

**IT IS FURTHER ORDERED** that Plaintiff file an explanation for his failure to serve the unserved Defendants in this case **within 14 days** of this Order during the objection period.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Second Motion for 90 Day Stay with Medical Evidence [#21] is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Lift Stay and Various Notices to the Court [#38] is **GRANTED IN PART** such that the stay previously issued in this case (as well as the requirement that all parties seek leave of Court before filing any document in this case) is **LIFTED**. In all other respects, the Motion is **DENIED**.

## VI.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 23rd day of December, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE